The order in which they appear, the first is PAYDEN v. BARNHARDT. That's submitted on the briefs. The first case for argument is JOHNSTON v. BARNHARDT. You may begin. Thank you. Good morning, your honors. My name is Jim Miller and I represent the claimant and appellant, Debbie Johnston. I would also like to try and be able to save a couple of minutes for rebuttal, if that's possible. This is a Social Security disability case, and I know that all of you have helped decide Social Security disability cases, so you may well be familiar with at least some of their statutory and regulatory procedures, which are very peculiar to that system. However, this case is not about any of those peculiar procedures or standards that are used in Social Security. This is really simply a case about claimant and appellant contention, the ALJ's failure to appreciate the medical record and the nature of the disease that caused her disability. This is exemplified by a page in Appellee's brief on page 18. In proceeding to argue about doctors' opinions of disability, Appellee notes further, appellant argues that the evidence about flares of symptoms was not contained in the opinions that the ALJ acknowledged. Let me try to get to the bottom line. Does this case really revolve around Dr. Cullen's opinion? What do you think that his view of this problem compels? I think that his view of this case definitely involved the idea of a waxing and waning process, which is typical for lupus apparently, which was diagnosed here with a steady diagnosis for over a year in 1999 and 2000. Or maybe later on they changed the diagnosis to connective tissue disease, or there's been some similar diagnosis before as they were trying to figure out what was wrong with her. But in any case, this disease waxes and wanes and has flares or flare-ups, as Dr. Cullen mentioned a number of times. And that's my point, Your Honor, that the ALJ never mentioned flares. The ALJ discredited Dr. Cullen's view that she was disabled to the point of not being able to work at all. Is that right? Yes. Why did the ALJ suggest that this view wasn't to be credited? He said that Dr. Cullen's opinions were not backed up by notes from the clinic practice, and also that he made inconsistent opinions in regards to the dates of disability. I think both of those were not very good reasons. In regards to the – yes? He also suggests that he made inconsistent – that his medical opinions were inconsistent in the sense that sometimes she – he said she was okay, and sometimes he said she wasn't okay. Yes. Yes. Well, that's sort of implied in the way the ALJ analyzed it. He just looked at the parts saying she was better. He did not mention the parts where Dr. Cullen said she was worse or had a flare. You know, he considered the whole thing. Well, I can't – He can't relate everything in his report, but he points to quite a number of interesting information here. She appeared well on November 99, wasn't under acute distress. Her arthrologists and myologists were quiescent. Overall, he opined that her disorder was under good control. She had normal gait, no obviously inflamed joints. So isn't that the reason that he discounted the treating physician's opinion, that there was all kinds of information in the treating physician's records that suggested she was not disabled and was capable of working? Well, that was an incomplete reading of the record to say that he noticed the improvement because, like, for example, on the transcript 428 where Dr. Cullen has a report that says she's better on 427, but also says on 428 that she continues to have two types of processes going on. One is the chronic process, and one is the more severe symptom flare-ups that make work problematic. And the ALJ never mentioned the word flares or flare-ups or changes in the course of the disease. So when the ALJ made that criticism about his clinic notes indicating improvement, he failed to appreciate the other part of the disease, the down part, the part that disabled her, in effect. So the ALJ will note the improvement, but never did note the flare-up part of it. I've heard this argument for 15 years, that if something is not mentioned by a district court judge or an immigration judge or an ALJ, that it necessarily means that that person didn't pay any attention to it. And I have a hard time accepting that, because as a judge, I all the time, in my right opinions, don't talk about all kinds of things. It doesn't mean I haven't paid any attention to them. It's that these opinions sort of distill the essence of what it is you're doing. And the ALJ says, here's why. I know Dr. Cullen's opinion. I've read it. I've looked at it. I consider it. But I'm not accepting it as the gospel, and here's why. Yes, I understand exactly what you're saying. However, from the record that the ALJ addressed, which mentions flares and flare-ups many times, the ALJ didn't – I think it's maybe imputing too much to the ALJ to say that he noticed it but didn't say anything, because it's critical to understanding the disease process in this case. It seems like very much part of it. What I understand you to be saying is that you said Dr. Cullen's findings were inconsistent or contradictory, but the reason they were inconsistent and contradictory is because of the diseases, essentially. Yes. It produces different symptoms at different times. And he didn't recognize that. Right. So by not recognizing flare-up – the flare-up issue, he didn't recognize an explanation for what he perceived as an inconsistency. Yes, Your Honor. That's how I see that muscle. Would you like to save time and respond? Yes, I would. All right. We'll hear from the other side. Thank you. Good morning, Your Honors. My name is Stephanie Martz on behalf of the Commissioner of the Social Security Administration. We just had this discussion here with Mr. Miller about flare-ups and whether the ALJ's decision actually accounts for the flare-ups in the condition that Ms. Johnston has. And I believe that the – Can I ask a question? Sure. What are aphralgias and viagrias? As I understand them, I guess I would call them aches and pains. Is that what it means? That's how I interpret that. But maybe Mr. Miller has a different answer. Itis means inflammation. Algia means what? You know, I really don't know. I've always just taken that as sort of this generic aches and pains and just that's how I've always viewed it. I've never actually – That's the way it used to be used 40 years ago by my grandmother. Regarding the flare-ups here, what the ALJ did note in his discussion of Dr. Collins' opinions was that medication improved her symptoms. And this specifically goes to the flare-ups. While the ALJ didn't specifically say she has flare-ups that are resolved by medication, Dr. Collins says that her flare-ups are resolved by medication. In November of 1999, he states, and I'm quoting, with respect to her SLE, she has a history of recurring somewhat infrequent oral sores, positive ANA, significant arthralgias involving her wrists, elbows, knees, hands and feet, with significant morning stiffness and pain with movement. This improves when she is warm or active. Prednisone causes dramatic resolution of her pain. And this is at the supplemental excerpts of record at page 133. In December of 1999, he also notes that she has flares, and he noted improvement with prednisone. I don't know that she said significant side effects. My reading of the record is that there is very limited ‑‑ there's really no discussion of side effects. You say there's no side effects in the prednisone. No. I couldn't say that. I mean, with all medications, there would be side effects. There were documented side effects. I think what I recall was the nausea and the stomach kind of issues. The medication and prednisone did not relieve the flare. But as noted by the doctor in November and December 1999, significant. And then other times she had, I believe that they decided to basically give her prednisone to have on reserve that she had asked for because that improved her symptoms. And March 12, 1999, at the supplemental excerpts of record, he said, here's some prednisone, keep it in reserve for when you have flares. And in March ‑‑ in November and December of 1999, he notes that she has dramatic resolution of her pain. 11.999, she's basically feeling well planned. When she has a flare, she should be checked. Otherwise, no change in treatments. That's 11.9. 11.24, she has no pain in her wrists, no acute distress. Normal. Mood disorder, stable. Prednisone was given in the past. She feels blue, no acute distress. Improvement with prednisone of her symptoms. But I think Judge Berzon put her finger on it. This is a rather different disease because it's not something that goes away and resolves. It kind of goes up and down and it comes on you at a moment's notice. And did the ALJ fully appreciate the nature of this infirmity in connection with making a decision? I believe he did. When he looked at the fact that she did take this prednisone, which is described by her doctors, causing dramatic resolution of her pain, and the ALJ noted that the symptoms improved with medication. And so I don't think it's true that he didn't appreciate the fact that she had the waxing and waning of this. He appears to have discounted Dr. Cullen sort of generally because he viewed his findings as internally contradictory or inconsistent. And my question is whether the inconsistency is the disease rather than a vacillation by the doctor. I agree that the disease does wax and wane. But I don't believe that the ALJ rejected the doctor's opinion because of the inconsistencies within the treatment notes. I believe what he said is that the objective, the treatment notes didn't support a finding of disability or that she would be limited to lifting five pounds. And the other things that he stated regarding her residual functional capacity. And what he based that on was the fact that when she had symptoms, she was able to take medication, which caused dramatic resolution of her pain symptoms. Does the ALJ say that Dr. Cullen is inconsistent? That's why I'm not crediting Dr. Myers. He just points out all kinds of... He states... The objective clinical evidence does not originally support his findings. Which is different than saying that they were internally inconsistent. And what he's basing it on, I believe, is the fact that the medication improves the pain, which the ALJ specifically noted that treatment notes indicate the claimant's impairment-related symptoms resolve rapidly with prednisone without any significant side effects noted at the current dosage level. And I believe that's a reasonable interpretation of the medical record as a whole. And the ALJ as a fact finder should be given deference of his interpretation of that record. What do we do with the statement, claimant was found by the undersigned not to be a credible witness as to the nature and degree of her symptoms and limitations? I believe that that's a correct credibility finding, which the plaintiff or Ms. Johnston has not directly challenged. In fact, it wasn't until the reply brief before this Court that it was even indirectly stated that credibility might be an issue, which was not raised before the district court. If there are no further questions, I respectfully request this Court affirm the ALJ's decision. Thank you. Thank you, counsel. You may respond. Thank you. Your Honors, counsel has, I think, with your help, focused on a part that's very illustrative. The use of steroids or prednisone to cure the disease or to improve the disease did have side effects. This is mentioned in one place, that transcript 212, where Dr. Cullen writes. Well, is she relying on the side effects as a reason why she was disabled? No, but what I'm getting to is that she's not allowed to use steroids more than a certain amount because chronic steroid use causes osteoporosis and she has to be careful about using steroids. What do we do with the finding that she's not credible? The undersigned finds claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision. From my point of view, Your Honor, she is credible when you take into account. From your point of view, she is, but we have a finding here. We're an appellate court. Yes, I didn't. It's not clear that you challenged that. Right. I did not. We did not challenge the credibility finding, but I. Are you stuck with that? Well. Well, I guess, except for one thing, that her reporting of her disease process was not understood. I didn't feel it was possible to get this credibility finding overturned, so I did not appeal it. Yet her complaints reflect the disease process. It's a peculiar disease with this particular sort of process, and her complaints reflect that. Maybe I should have appealed that. We're certainly not going to hold it against you. It's just part of the record. Yes. That's all I have, Your Honor, unless there's any other questions. Well, I don't know. I guess I do have a little time. I'll just finish up on this last point, which is that each improvement was preceded by a worsening or a flare-up of symptoms. Of course it improved with medication. That's how this disease works, with steroids. In addition to that, she was also taking Plaquenil during much of this time. That's what was prescribed by her rheumatologist, who was on top of the situation. I think my reply brief sums this up fairly well, and I would like you to refer to that, where each improvement is followed and then or is preceded and then sometimes followed by a flare-up. So that's just something the LGA did not notice. I contend. Thank you, counsel. Thank you both. The case just argued is ordered and submitted. Thank you. We'll call Delia Mofrad v. Ashcroft. Thank you.
judges: Trott, Paez, Berzon